**IN THE UNITED STATES DISTRICT EASTERN
DISTRICT OF ARKANSAS  CENTRAL DIVISION**

**BENJAMIN PITTS, ADC #148011**                                         **PLAINTIFF**

**v.**                                   **CASE NO. 4:20-cv-0849-KGB-BD**

**DEXTER PAYNE, et al.**                                                  **DEFENDANT**

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

COME NOW Arkansas Division of Correction Defendants, Dexter Payne, James Gibson, Christopher Johnson, and Dexter McDonnel by and through their attorneys, Arkansas Attorney General Leslie Rutledge and Assistant Attorney General Robert T. James, and for their Statement of Undisputed Material Facts, state:

1.     Pitts is an inmate with the Arkansas Division of Correction   Varner Supermax Unit ("ADC") (DE 02; Ex. B at ¶3)

2.     On July 20, 2020, Pitts filed this lawsuit against Defendants pursuant to 42 U.S.C. § 1983, alleging Defendants violated his religious rights under the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (DE 02)

3.     Defendants deny these allegations. (DE 5)

4.     Pitts was an inmate of the ADC during the times alleged in his Complaint. (DE 02)

5.     Pitts is a member of the Rastafarian faith. (DE 02; Ex. A at 10:11)

6.     Pitts claims his religion requires him to observe a natural lifestyle. Pitts interprets this as a requirement that he must wear his hair in dreadlocks. Ex. A, -13)

7.     Dreadlocks are comprised of hair that is bound and/or knotted. Ex. A at 11:12; Ex. C, *Declaration of Randy Shores* at ¶9)

8.      The ADC grooming policy allows inmates to grow their hair long, but it must be kept neat, easily combed, and free flowing.  (Ex. C at ¶8)

9.      The ADC grooming policy prohibits inmates, including Pitts, from wearing their hair in dreadlocks due to security concerns. Ex. C at ¶8)

10.     Dreadlocks present a serious security threat to the ADC. (Ex. C at ¶¶9-13)

11.     Dreadlocks are difficult for prison staff to search because it is impossible to run a comb or fingers through the dreadlocks. Ex. C at 18)

12.     Dreadlocks allow inmates to hide contraband items. (Ex. C at ¶¶11-13)

13.     Specifically, dreadlocks can be used to conceal (among other items) drugs, weapons (such as shanks), phone SIM cards, handcuff keys, cell phones, and needles. (Ex. C at ¶12)

14.     The ADC has a special concern regarding drug contraband, given the rising popularity of a substance known as K2. (Ex. C at ¶32)

15.     K2 is a highly dangerous substance which is lethal in small doses. Ex. C at ¶33)

16.     Inmate use of K2 has resulted in multiple deaths at the ADC. Ex. C at ¶34)

17.     The only proper way to search dreadlocks would be to search the individual locks themselves. This would require staff or the inmate to untangle or pull apart the dreadlocks. (Ex. C at ¶24)

18.     Pitts would not allow prison staff to separate or untangle the locks in any way, as he claims this would violate his religion. (Ex. A at 11:7-18)

19.     The nature of dreadlocks allows some contraband items to remain concealed, even while the inmate's head is upside down. For this reason, having an inmate turn his head over and shake or run his hands over or between the locks (but not through the locks) does not always reveal hidden contraband. (Ex. C at ¶30)

20.     The only way the ADC can ensure it is adequately preventing contraband is to search the individual dreadlocks by untangling or separating the locks. (Ex. C at ¶24)

21.     Mr. Pitts has requested an exemption form from the ADC's grooming policy so that he can wear his hair in dreadlocks.  (Ex. C at ¶25)

22.     Mr. Pitts has requested an exemption which would prohibit staff from conducting any type of search that untangled or separated the dreadlocks in any manner.  (Ex. C at ¶25)

23.     Allowing Mr. Pitts such a complete exemption from the ADC's grooming policy presents several problems from a security perspective.  (Ex. C at ¶25)

24.     Under such an exemption, there would be no way to ensure Mr. Pitts, or any other inmate granted a similar exemption, did not conceal contraband in the individual dreadlocks themselves.  (Ex. C at  ¶26)

25.     This would significantly heighten the ADC's security concerns, and more importantly, place the health and safety of staff and other inmates at risk.  (Ex. C at ¶26)

26.     Giving an exemption would create the perception of preferential treatment, which jealousy and discord among inmates who are not given such an exemption. (Ex. C at ¶27)

27.     Inmates are generally prone to react with jealousy rather than with understanding when another inmate is granted a benefit or privilege and they are not. This creates discord among the inmates, which can lead to violence.  (Ex.C at ¶27)

28.     Inmates are generally prone to react with jealousy rather than with an inmate is granted a benefit or privilege and they are not. This creates discord among the inmates, which can lead to violence. (Ex. C at 27)

29.     Mr. Pitts has religious textbooks that are used to practice Rastafarian religion.  (Ex. A at 18:23-25)

30.     Mr. Pitts has not been given permission to wear his hair in dreadlocks.  (Ex. C at ¶4)

31.     There is no record of Mr. Pitts receiving a religious exemption to wear his hair in dreadlocks.  (Ex. B, *Declaration of James Gibson* at ¶5)

32.    Inmate Pitts styled his hair in dreadlocks in violation of ADC's grooming policy.  (Ex. B at ¶6)

33.    Inmate Pitts was given a direct order to comply with the ADC's grooming policy by removing the dreadlocks from his hair, and he refused.  (Ex. B at ¶7)

34.    The ADC cannot force Inmate Pitts to remove his dreadlocks. Instead, staff may only Order him to comply with policy, and reprimand him if he fails to do so. (Ex. B at ¶8)

35.    Inmate Pitts is currently housed in restrictive housing.  (Ex. B at ¶9)

36.    Inmate Pitts will not be released into the general population until he conforms with the ADC's grooming policy.  (Ex. B at ¶10)

37.    All inmates at the ADC are permitted to have a religious text and other religious literature purchased from a commercial or charitable source that does not conflict with security.  (Ex. D, *Deposition of Joshua Mayfield* at ¶6)

38.    Inmates of any religion at the ADC may participate in group worship services under the guidance of an approved free-world sponsor of their faith.  Ex. D at ¶7)

39.    Inmates of any religion are allowed to receive personal visits from religious volunteers, and one-on-one pastoral visits with an approved religious leader. (Ex. D at ¶8)

40.    Inmates of any faith may privately worship in the chapel if the facility and schedule allows.  (Ex. D at ¶9)

WHEREFORE, ADC Defendants respectfully request their Motion for Summary Judgment be granted, that the respective claims against them be dismissed, and to any and all other proper relief to which they are entitled.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

By:    *Robert T. James*
       Robert T. James
       Ark. Bar No. 91008
       Assistant Attorney General
       Arkansas Attorney General's Office
       323 Center Street, Suite 200
       Little Rock, AR 72201
       Phone:  (501) 682-3658
       Fax:    (501) 682-2591
       Email:  robert.james@arkansasag.gov

       *Attorneys for ADC Defendants*

## CERTIFICATE OF SERVICE

I, Robert T. James, Assistant Attorney General, do hereby certify that on May 25, 2021, I mailed the document by United States Postal Service to the following non CM/ECF participants.

Benjamin Pitts, ADC #148011
ADCG – Varner Unit
P.O. Box 600
Grady, AR 71644

                          Robert T. James