IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BENJAMIN PITTS**                                                                              **PLAINTIFF**
**ADC #148011**

V.                             NO. 4:20-cv-00849-KGB-ERE

**DEXTER L. PAYNE, et al.**                                                              **DEFENDANTS**

## ORDER

On September 24, 2024, United States Chief District Judge Kristine G. Baker referred this case for a recommendation regarding Plaintiff's request that the Court enforce the parties' settlement agreement. *Doc. 84*. Pursuant to that referral, the parties have thirty days from the entry date of this Order to file status reports, which may address issues specified in the conclusion section of this Order. The parties are free to stand on the present record if they have no additional argument or information, and I will determine based on the parties' submissions whether an evidentiary hearing would be beneficial.

**I.     Background**

On July 20, 2020, *pro se* plaintiff Benjamin Pitts, an Arkansas Division of Correction ("ADC") inmate, filed this lawsuit alleging that Defendants, ADC officials, interfered with his ability to practice his religion by denying him an exemption from ADC grooming policy.

The parties eventually entered a settlement agreement ("Agreement"). *Doc. 57-1*. Pursuant to the Agreement, Mr. Pitts released his claims in exchange for: (1) a religious accommodation to wear his hair in dreadlocks, which would be recorded in his Chaplaincy file and the ADC's electronic management system; (2) reversal or dismissal of all disciplinaries he received as a result of wearing dreadlocks from July 20, 2020 through December 22, 2022;[1] and (3) re-classification to a Class III inmate, placement in an ADC step-down program, and release into general population *if and when* he obtains Class I status.[2] *Doc. 57-1 at 2-5*.

As to Mr. Pitts, the Agreement: (1) allows him maintain his dreadlocks in a soft and bendable condition, sufficient to facilitate a hair search, at a length no longer than the bottom of his shoulder blades; (2) specifies that his religious accommodation will end if he is found with contraband in his hair; and (3) specifies that after his reclassification to Class III, he will be placed in a step-down program, the completion of which, along with earning Class I status, gave Mr. Pitts the opportunity for release into general population. *Id. at 2*.

---

[1] The Agreement calls for the reversal or dismissal of all disciplinaries for wearing dreadlocks that Mr. Pitts received from July 20, 2020 through "the present date." *Doc. 57-1*. The Agreement provides that it not become effective until an Order of Dismissal with prejudice is entered . . ." *Doc. 57-1 at 5*. Chief Judge Backer entered the Order of Dismissal and Judgment on December 22, 2022.

[2] When the parties entered the Agreement, Mr. Pitts was classified as a Class IV inmate. *Doc. 57-1 at 2*.

2

The Agreement specifies a thirty-day period for Defendants to perform their contractual obligations related to reclassifying Mr. Pitts as Class III inmate and provides that Defendants' duties are "satisfied once the Plaintiff has received his religious accommodation and his class has been changed to 'Class III.'" *Id. at 3*. After the one-time reclassification, the Agreement specifies that Mr. Pitts "classification status is thereafter dependent upon his future conduct and subject to existing disciplinary and classification processes." *Id. at 3*.

On December 22, 2022, Chief Judge Baker granted the parties' joint motion to dismiss, thereby making the Agreement effective the same day,[3] and she retained jurisdiction to enforce the Agreement. *Docs. 61, 62.* On January 19, 2023, Mr. Pitts made a *pro se* filing, reporting that Defendants had breached the Agreement, which he had reported to his appointed counsel, to no avail. *Doc. 63*. On January 23, 2023, Defendants filed a status report, stating that they were in full compliance with the Agreement. On February 24, 2023, Mr. Pitts filed a *pro se* "writ of execution" alleging that Defendant Payne breached the Agreement by failing to: (1) pay his legal fees; (2) provide him a religious accommodation; and (3) reclassify his status to Class III or place him in the step-down program. *Doc. 68*. In addition, Mr. Pitts requested permission to proceed *pro se*. *Doc. 69*. Defendant Payne responded that Defendants had fulfilled the terms of the Agreement. *Doc. 70*.

---

[3] See *infra* note 1.

On August 28, 2023, Chief Judge Baker: (1) relieved Mr. Pitts' appointed counsel from further representation; (2) denied Mr. Pitts' request for costs; and (3) directed Defendants to file a variety of documents regarding their compliance with Agreement terms. *Doc. 71*.

Defendants filed the documents as ordered (*Docs. 73, 74, 75*), and Mr. Pitts filed additional motions asserting that Defendants had breached the Agreement. Docs. *72, 80, 82*. On September 24, 2024, Chief Judge Baker denied Mr. Pitts' then pending motions and referred this matter to me for a recommendation regarding Mr. Pitts' requests for enforcement of the Agreement. Chief Judge Baker made clear I should consider Mr. Pitts' more recent filings (*Docs. 72, 82*) and documents filed by Defendants (*Docs. 66, 67, 68, 69, 73, 24, 75*) in making my recommendation. *Id. at 2*.

## II.  Discussion

Mr. Pitts' request to enforce the Agreement is akin to a claim for specific performance, an equitable remedy that compels performance of a contract or agreement on the agreed terms.[4] *Union Pacific R.R. Co. v. Barber*, 149 S.W.3d 325, 351, 356 Ark. 268, 307 (2004). As such, the Court has some latitude in granting or

---

[4] Chief Judge Baker previously determined that the Agreement is a valid contract governed by Arkansas law. *Doc. 71 at 3*.

withholding relief depending on the upon the equities and circumstances of this case. *Dossey v. Hanover, Inc.*, 891 S.W.2d 67, 69, 48 Ark. App. 108, 110 (1995).

As noted by Chief Judge Baker, Defendants have submitted documentation showing compliance with requirements to afford Mr. Pitts' religious accommodation and reclassify him as a Class III inmate, within 30 days of the Agreement (by January 22, 2023). In addition, Defendants have submitted evidence showing that as of September 11, 2023, Mr. Pitts' chaplaincy file contained a copy of the Agreement, which evidences Mr. Pitts' religious accommodation.

In recent filings, however, Mr. Pitts reports that as of August 28, 2023, there was "no religious accommodation" in his chaplaincy file. *Doc. 72*. He also states that despite documentation showing that Defendants reclassified him as a Class III inmate, they failed to treat him as such or place him in a step-down program, which could lead to less restrictive housing in the general population. For example, Mr. Pitts reports that he was not permitted to come out of his cell to participate in the step-down program and he has no plans for release to the general population. *Doc. 79 at 2*. Finally, Mr. Pitts asserts that he "never received a religious accommodation" and received a major disciplinary on January 11, 2024 "about his hair."[5] *Doc. 82 at 1*.

---

[5] Mr. Pitts submitted a copy of the January 11 disciplinary, which states that the charging officer noticed that Mr. Pitts "had his hair in a ponytail" and he "had been counseled . . . on several occasions and [knew] it is against DOC written rules to have his

## III.     Conclusion

For the reasons stated, IT IS HEREBY ORDERED that:

1.     Each party has 30 days from the entry date of this Order in which to file a status update.[6]

2.      Defendants may address Mr. Pitts' allegations that: (a) he has received different treatment than other Class III inmates and has not received opportunities normally available in the step-down program; and (b) as of August 28, 2023, his religious accommodation to wear dreadlocks was not included in his chaplaincy file.

3.     Mr. Pitts may explain in his status report: (a) whether the absence of documentation of his accommodation in his chaplaincy file before September 11, 2023 caused him to suffer harm and, if so, how; and (b) whether the previously

---

hair in a *ponytail.*" *Doc. 82 at 10* (emphasis added). Mr. Pitts pleaded not guilty to the charge, stating, "I have been approved by the courts that I can wear my hearing in dreads . . . . " *Id. at 12*. Defendants previously responded, noting that Mr. Pitts received a disciplinary for wearing his hair in a ponytail, an issue not covered by the Agreement. *Doc. 83 at 1*.

[6] Mr. Pitts is reminded that as a party appearing *pro se*, it is his duty to respond to this Order. He should also be aware of Rule 5.5(c)(2) of the Local Rules of the United States District Court for the Eastern of Arkansas, which provides:

> It is the duty of any party not represented by counsel to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. A party appearing for himself/herself shall sign his/her pleadings and state his/her address, zip code, and telephone number. *If any communication from the Court to a pro se plaintiff is not responded to within thirty (30) days, the case may be dismissed without prejudice.* Any party proceeding pro se shall be expected to be familiar with and follow the Federal Rules of Civil Procedure.

## III.     Conclusion

For the reasons stated, IT IS HEREBY ORDERED that:

1.     Each party has 30 days from the entry date of this Order in which to file a status update.[6]

2.      Defendants may address Mr. Pitts' allegations that: (a) he has received different treatment than other Class III inmates and has not received opportunities normally available in the step-down program; and (b) as of August 28, 2023, his religious accommodation to wear dreadlocks was not included in his chaplaincy file.

3.     Mr. Pitts may explain in his status report: (a) whether the absence of documentation of his accommodation in his chaplaincy file before September 11, 2023 caused him to suffer harm and, if so, how; and (b) whether the previously

---

hair in a *ponytail.*" *Doc. 82 at 10* (emphasis added). Mr. Pitts pleaded not guilty to the charge, stating, "I have been approved by the courts that I can wear my hearing in dreads . . . . " *Id. at 12*. Defendants previously responded, noting that Mr. Pitts received a disciplinary for wearing his hair in a ponytail, an issue not covered by the Agreement. *Doc. 83 at 1*.

[6] Mr. Pitts is reminded that as a party appearing *pro se*, it is his duty to respond to this Order. He should also be aware of Rule 5.5(c)(2) of the Local Rules of the United States District Court for the Eastern of Arkansas, which provides:

> It is the duty of any party not represented by counsel to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. A party appearing for himself/herself shall sign his/her pleadings and state his/her address, zip code, and telephone number. *If any communication from the Court to a pro se plaintiff is not responded to within thirty (30) days, the case may be dismissed without prejudice.* Any party proceeding pro se shall be expected to be familiar with and follow the Federal Rules of Civil Procedure.

discussed January 11, 2024 disciplinary is the only disciplinary he has received that allegedly violated the Agreement.

    4.    Either party may provide any other relevant information or argument regarding the issue of whether the Agreement was breached.

    SO ORDERED 1 October 2024.

_____
UNITED STATES MAGISTRATE JUDGE